We're going to first hear the case of Raheem Wilcox v. Warden, and is it Mr. Bibikos? Yes, Judge. Am I pronouncing your name correctly? You are, sir. All right, great. Thank you very much. Good afternoon, Your Honors, and may it please the Court. George Bibikos from Cozen O'Connor on behalf of Mr. Raheem Wilcox is the appellant in this case. May I reserve two minutes of rebuttal time? You may. Thank you, sir. Your Honors, Mr. Wilcox requests that the Court reverse the District Court's order denying habeas corpus relief. Mr. Wilcox's prior counsel was ineffective under the Sixth Amendment because he did not submit mitigating evidence of the appellant's troubled background and diminished mental health at the sentencing phase. And as a result, Your Honors, Mr. Wilcox received a longer sentence than he should have. We're all familiar with Strickland's two-part test. Obviously, we have to demonstrate some objectively unreasonable standard of performance by counsel, and then consequently resulting the outcome of the proceedings at the particular stage in question. By mitigating evidence, are you referring to a report, a psychological report that was prepared by counsel, and his trial ‑‑ I'm sorry, sentencing decision not to use that report, or is there something else that he should have? Your Honor, the mitigating evidence would be the psychological evaluations conducted by both doctors that trial counsel procured before trial. The question in this case is, having had procured that information, which would support a mitigating factor under New Jersey sentencing guidelines. He should have submitted it to the sentencing judge. That's correct, Judge. What about the idea that the report might completely have backfired? I mean, it does contain information that the prosecutor could very well have used at sentencing, even to enlarge his sentence and to make him appear to be a lot worse than he was. Your Honor, the answer to that is the standard of performance that counsel has to engage in at sentencing is set forth in various cases with the ABA guidelines, as this Court has relied on, to determine what counsel has to do at sentencing. And remember, sentencing is a different analysis than trial. Guilt phase is different. Did you do it? Did you not do it? Would mental health evidence support an insanity defense or not, or a provocation defense or not, and so on and so forth. At sentencing, the calculation is a little different. The guidelines suggest that counsel has to submit all mitigating evidence that would support mitigating factors that would help the defendant get a lesser sentence. What if counsel was making a strategic decision not to? He had the report prepared, and he went through the trouble of getting a report, and he chose not to use it. Why could that not have been a strategic decision? Your Honor, in this case, there's no evidence that he engaged in any strategic decision. But can't we imply it from the fact that we have in front of us the reports that Mr. Wilcox believes should be offered? We have the state's report that wasn't offered because the trial counsel didn't offer it. Sure. And being aware of that information, can't we infer that was strategic? He took the time, and I refer to him talking about trial counsel, took the time to obtain the reports, spoke to other individuals, and chose not to introduce them. And because we can see what they contain, why can't we infer that was strategic? I don't think we can infer a strategy or at least conclude that it was a reasonable strategy in light of all the other circumstances. Number one, if you don't have evidence that trial counsel engaged in a strategy, who knows what the thinking was? How would you know that? I mean, that's just not announced. I mean, the counsel makes a decision, I am not going to use this report because it's going to be more harmful than beneficial. Why can't we deem that to be a strategic decision? I mean, it's not something that counsel announces. Understood, Your Honor, but I think under the specific circumstances here, number one, again, we debate about not having evidence and whether to imply or not imply, but the question really was that that was a reasonable situation. And under the circumstances here, we had a defendant who had already met some mitigating factors. We had a defendant who had no prior criminal record. We had a defendant who had no run-ins with the law, no crimes, violent or nonviolent. And all of a sudden, we have him committing this terrible act. And at sentencing, the sentencing judge concluded that I find two aggravating circumstances exist. I find two mitigating circumstances exist. I don't know anything about the mental health reports. I never saw them. I'm not going to go there. I think in that situation, the aggravating slightly outweighs the mitigating, and therefore, we're going to sentence him to 40 years. So we're starting on the lower end with Mr. Wilcox, and we had a wash, two against two. The judge made a judgment call that the aggravating only somewhat, quote, somewhat outweighed the mitigating circumstances, and therefore, I'll give you 40 years, 30 years without parole. What do we make of the fact that the judge who presided over the post-conviction proceedings was the same judge who imposed sentence? And during the course of the post-conviction proceeding, that judge says that trial counsel made the best arguments that he could and that he could not think of anything else that conceivably would have made a difference. Doesn't that observation mean that there was no prejudice for Strickland purposes because there's no reasonable likelihood that the outcome would have been different? No, Your Honor, for a couple of reasons. Number one, at sentencing, the trial – I beg your pardon – on post-conviction relief, the judge – number one, I don't think it matters that it's the same person. I think everybody puts on different hats at different stages of the proceeding, especially under New Jersey law. You might have the trial judge presiding over the trial, the jury rendering verdict, the sentencing judge being the same person presided over trial, and then the same PCR judge. So I don't know that the fact that it's the same person is material in any way. But what the judge did there was not opining on whether those psychiatric evaluations would have changed the sentence. He was talking about something else. He was talking about the guilt phase of trial and whether the counsel, Mr. Norse, I believe, at sentencing argued that Mr. Wilcox was remorseful or not. My information could be wrong, but just to follow up on Judge Schwartz's comment, the same judge who did the sentencing did the post-conviction motions. But that judge, if I am not mistaken, read the psychological reports and said it wouldn't have made any difference. I'm afraid you are mistaken, Judge. That was a different judge? No. The reports were never available to the trial judge at trial, to the sentencing judge. No, no. I know at trial. But post-conviction relief, the reports were not available to the judge. But he did have oral descriptions of their contents during the course of the proceedings. Somewhat. Very cursory, Your Honor. I think counsel for Mr. Wilcox during post-conviction proceedings mentioned that they had witnesses available to testify as a justification to get a hearing on post-conviction relief, which was then denied. But there are references to the two authors of those reports. There's descriptions of the contents of those reports. So it's not like the PCR judge was without any context within which to make a judgment as to whether it would have mattered for sentencing. And the remarks that I was referring you to, it comes in the context of the judge's findings about whether there was ineffective assistance at the time of sentencing. Correct. And so I was looking at Act 273. So it wasn't in the context of the guilt phase. And you might have said it more than once, but these observations were at the sentencing. The trial court said even in the absence of reports, trial counsel was so effective in his sentencing presentation that despite the presence of aggravating factor one, the nature and circumstances of the offense, Wilcox was sentenced in the lower end of the range. So how can we find prejudice under these circumstances? Well, in this case, again, let's assume that counsel fell below professional standards and now we're on to the prejudice consideration. In this circumstance where you have a defendant who was already, and we talked about this before, who was already at the lower end of the sentencing spectrum, who has met various other mitigating factors, and who the sentencing judge even conceded should be at the lower end of the range for premeditated murder, all you need is a probability that these mental health evaluations would have affected the sentence in a positive way. We don't need certainty. We just need a probability. with respect to both the objective reasonableness of counsel's performance and the prejudice issue? I think because, and this kind of gets back to the confusion over whether the PCR judge was really commenting on the mental health evaluations or just commenting generally on counsel's performance at sentencing. But on one hand, arguably the PCR court never reached an adjudication on the merits of the ineffective assistance of counsel in that sentencing with respect to these mental health reports and their effect on sentencing. So in that circumstance, I think it's all bets are off. When you say that, do you mean De Novo? I do. As opposed to Ed Pedefrans? I do, I do. Okay, because I think that's what Judge Manosky was driving at. Having said that, even if we can cut the Gordian knot and say, pick the harder of the two standards, and I think Mr. Wilcox established that he was entitled to habeas relief even under a more deferential standard. Because, again, you still have to decide whether the courts were unreasonable in their application of these standards to the circumstances that Mr. Wilcox faced or were contrary to those standards. Is there any suggestion in the record that had this report been submitted and considered by the sentencing judge, that his sentence would have been different? His sentence was, if I remember correctly, 30 years, 40 years. The possibility of parole after 30. After 30. We don't have any indication that the sentencing judge would have given him a lesser sentence had he had the reports. The sentencing judge said, I don't have them. I'm not going there, for whatever reason. I mean, he stated that on the record. He said the same thing at the proceeding on post-conviction relief, too, by the way. He said, I don't have, when they were, again, talking about the guilt phase of trial and ineffective assistance at the guilt phase, the sentencing judge said, I don't have those reports. I'm not going there. You didn't make out a case. Denied. But there the court was talking about the propriety of certain types of jury instructions, right? I believe so, Your Honor. But I think the judge was specifically referring to the claim on post-conviction relief where Mr. Wilcox's counsel was saying Mr. Norris at trial ought to have submitted these witnesses and the reports to propose a provocation defense and sanity and one other thing. I wanted to just follow up on something that Judge Van Aschen was asking about in terms of the standard of review. Sure. And in order for epidephrin to apply, there has to be a merits-based decision. And you mentioned your view about the PCRA court's opinion and not, from your point of view, not reaching it. Sure. But the Intermediate Appellate Court, the Appellate Division, specifically, ruled on this subject. So we do have in front of us a merits-based decision. You may think it was wrongly decided, but don't we have to, as a result of that merits-based decision, apply epidephrins? I think, Your Honor, it's almost like a reverse ilst analysis where you have to look through and find some reasoned decision. And in that circumstance, I think, and my time is up, if you don't mind. No, please. Please, put your answer. And in that circumstance, the District Court certainly looked to the Appellate Court decision on Mr. Wilcox's claims and made a decision under the AEDPA of whether that decision was contrary to or an unreasonable application of federal law. So that's, again, while we believe that that particular issue, very narrowly defined, was never really adjudicated on the merits, we certainly concede that at some point the Appellate Courts took that issue up. Now, are we required to give the state court decision a high degree of deference? I would say no, Your Honor. I think, again, under the AEDPA, the standard is very clear. Was it contrary to or an unreasonable application of federal standards? And, again, you still have to get to the Strickland analysis to make that determination. What I think ultimately will be is the standard that you're going to apply is going to dictate the outcome, obviously, of the case. But we submit, again, I think going back to the point, the way Mr. Wilcox prosecuted his habeas petition, raised the issues, the way that they've been framed up and presented, either way we think that he made out a habeas case and he's entitled to that relief. Thank you. We'll have you on rebuttal. Thank you. Is it Mr. Leibowitz? Yes, Your Honor. Am I pronouncing your name correctly? You are. All right. Milton Leibowitz for Special Deputy Attorney General, Acting Assistant Prosecutor for the Warden of New Jersey State Prison and the State Attorney General. May it please this Court, the appellee's request that you affirm the district court ruling denying defendant's habeas petition because it properly found that the state court rulings were neither contrary to nor an unreasonable application of Strickland. Before I begin in the substantive arguments, I just want to clarify something that I believe may have caused some confusion in the State's brief, especially upon review of the appellee's reply brief and Your Honor's comment that the physical reports were before the PCR report. I apologize if my brief led the Court to believe that. Our argument was more that the substantive arguments, the troubled history that defendant faced as a child or that he alleged to have faced, the actual reports themselves were commented upon at the PCR hearing. So the overview of those reports were before the PCR court. And as such, although it did not have the physical bound copies of the reports that the experts had provided, it had what was necessary to decide the issue on the merits. And when it ruled that defendant failed to satisfy either prong of Strickland, it did so with every fact that was needed and all the information that was before it. Now, with respect to the first prong of Strickland, as Your Honors have recognized, counsel's decision not to produce these reports at sentencing was in fact strategy. And this was recognized by the Appellate Division on the appeal of the PCR. When the Court explicitly stated so, counsel made a strategic decision to focus on the uncontested mitigating evidence that it could present and ensure that the Court found those mitigating factors instead of trying to conflate the issue or to confuse things by making this a battle of the experts, by introducing expert reports that had unfavorable statements that cast a negative light upon defendant and upon his cousin who testified at the sentencing hearing. Did the government have an expert report? The government did. So you were ready to counter the defendant's expert report? Yes, Your Honor. But there's no doubt that this defendant had a really, really troubled childhood, one that was accented by a great amount of violence by his own parents, for example. I believe the only proof of that is the statements of defendant in the reports themselves, statements to experts in preparation for trial in expectation of setting forth this insanity defense. And unlike many of the cases that the appellee cites where an investigation was insufficient, where there were hard proofs such as school records, DCP&P records, other evaluations that could support these claims, the only thing before the Court, even with review of these expert reports, are defendant's self-serving claims that he had a troubled childhood. His cousin didn't comment upon it. In fact, defendant didn't comment upon it when he read into the Court his letter indicating why he should be sentenced at the lesser end of this range. So although the reports may have had some information regarding a troubled childhood, the only proof of that is from defendant's mouth himself, and he could have said so to the Court when he appeared for sentencing. So respectfully, the statements in those reports are of very little evidential value and wouldn't have necessarily established mitigating factor for it. I mean, hypothetically speaking, what if we were to say that was really bad strategy and maybe this might have helped? What if we were to make that decision? I don't believe that appellant can satisfy the rule. Would it make any difference? No. Why? Because as Your Honor has pointed out, the PCR judge was the sentencing judge, and I disagree with appellee's counsel in the fact that this does make a difference. This is not one judge reviewing another judge's evaluation of the aggravating and mitigating factors and weighing them anew. This is a judge who heard the entire sentencing proceeding, heard all of those facts, heard much of this new information. Although he did not have the reports, this judge was able to review the claims that this defendant had a very hostile childhood and was a product of that environment and ultimately came to a conclusion that defendant could not demonstrate prejudice. And that is a clear indication that had this information been provided at sentencing, he would have still received a 40 with a 30. How do we compare that statement with what the very same person said at the sentencing when confronted with the obligation to look at various mitigating factors? And one of the mitigating factors is whether this is likely to reoccur, recidivism basically. And one of the comments that sentencing judge made was, I can't consider these factors in the absence of psychological reports. So doesn't that statement provide a basis to say there's a reasonable probability that the sentencing judge would have reached a different outcome had the reports existed? I think that presupposes that he would have found that those factors applied based on these reports. And in light of the State's expert report to the contrary, I submit that he would not have reached the mitigating factors that those issues address. Additionally, defendant never alleged that those issues would have been found had these expert reports been admitted to the court. And as such, the State submits that. That hasn't necessarily been briefed completely. But I understand the concern. Nevertheless, I would say given the competing expert reports, defendant can't establish with a reasonable probability that had counsel at sentencing provided the expert reports, that those additional mitigating factors would have been provided. To clarify the record a little further, I believe that there actually were three aggravating factors that were found, one, six, and nine. Aggravating factor one is rarely found in my experience, which I recognize is not part of the record. But aggravating factor goes to the heinous nature of this crime. And defendant here, he planned the murder of his girlfriend. He brought the knives with him on the day of the murder. He stored them underneath the vehicle. He waited for her to leave her job. He proceeded to get into an argument with her, and then he stabbed her. And the judge found that the facts of this case were so heinous as to find aggravating factor one. Now, admittedly, the court stated that it gave it little weight, but it still is a very strong factor. And although a simple analysis would be to say that there were three aggravating factors and two mitigating factors and look at the pure numbers, the way that the sentencing judge is supposed to evaluate this is more of a balancing, not pure numerical situation where you have three on one hand and two on the other, but to really weigh the value of them, to look at whether or not they're strong or whether or not they're weak factors and determine a sentence. And respectfully, I would submit that even if mitigating factor four were applicable in this case, it would not change the sentence. What was the sentencing range here? It was 30 to life, which would be, I believe, 75 years if we were to put a number on it. So the mid-range would be approximately 55 years. Was it 30 or a maximum of 40? The sentence he received was a max of 40 with a minimum of 30 parole and eligibility. The max he could have received would have been life, which I believe for calculation purposes is at 75 years. So this clearly is at the lower end of the range, which the judge stated he wanted to do. And while another mitigating factor may appear to say, well, he was at the lower end of the range, if you just tack on another mitigating factor, surely the judge would have sentenced him to something less. Now, presumably he could still be eligible for parole at 30. Correct. If on good behavior, he would be released at 30. On either of the two sentences, the one he's asking for, which is just 30, and the other one, he could still be eligible for parole at 30. Correct. All right. I guess he wants to eliminate the uncertainty of parole. So it was a mandatory minimum of 30 years? Correct. How do you respond to your adversary's argument that there's not sufficient evidence to conclude there was a strategy behind not offering these reports in connection with the sentencing? Well, an evidentiary hearing surely would have shed more light on this and made it dispositive. I don't think that one is necessary every time a defendant alleges that something is not strategy, because to do so would require an evidentiary hearing in every single case. As Your Honor pointed out, the court was able to evaluate, at least the appellate division, the competing expert reports. The court was able to review his prior conduct. Here, counsel had submitted folders worth of, I believe, letters of recommendation on behalf of the defendant. He called the defendant's cousin to testify and had the defendant testify. This wasn't a cursory evaluation, and I think that the court can, and in this situation, properly reviewed everything and determined that this was, in fact, strategy. I will admit that if an attorney took the stand and said, yes, this was strategy, I thought X, Y, and Z, there would be no debate about it, but I don't think that that's necessary in every single case. I think courts can make inferences just as jurors do when evaluating evidence, and defendant needs to do more than just show two reports that the attorney had and just did not present. Do you think we should take anything from the fact that some of the cases your adversary cite really focus on a failure to investigate? Yes. Should we infer that his trial counsel's conduct in getting these reports and talking to other individuals discharged his obligation to investigate, and we should then look at whether his decision-making was an informed decision? And do you think that should weigh in favor of concluding it must be strategy? Does that matter? If I understand Your Honor correctly, I believe, yes, that because defendant has never alleged, and based on the actions of counsel, it is, in my opinion, it is clear, as the courts have found, that counsel performed a sufficient investigation in gathering all of this evidence. I believe that should be weighed against defendant's claim that this was not, in fact, strategy. This is not a situation where there were reports that this defendant was involved in the two most heroic battles of Vietnam, which is one of the cases that defense counsel cites. This is not a case where defendant had extensive records describing his nightmare childhood and that he had a borderline mental deficiency. It's not a situation where counsel failed to investigate defendant's prior conviction, notwithstanding the state's intention to use it. I would submit that this is clear, that counsel thoroughly investigated this case, developed a strategy which was to streamline the sentencing hearing to put forth the best mitigating factors, the ones that he had the most likely to obtain, and to go from there. And rather than introduce these expert reports that were created for something else, created for a diminished capacity to defense, that it was proper for him to evaluate them, look and determine that maybe these reports aren't great, especially in light of some of the comments that defendant made to his experts at the time, comments such as the fact that he thought of hurting the victim before work on that day, further showing that it was preplanned and not just something that happened. Comments to his cousin, asking her if she saw the movie Primal Fear, where the guy killed someone and faked insanity to win the case, essentially what defendant almost attempted to do in this case. There are a lot of situations or a lot of facts in this case and in these reports that were harmful to defendant. Do you think we should focus on the investigative aspect of this case? In other words, supposing we were to say this is an incredibly thorough investigation, this is super, doctors were involved, the background was checked, etc., etc. And then the choice is made not to submit the report. Is it enough for us to say the investigation was thorough, very professional, met the Strickland standards and then it's counsel's decision whether or not to submit the report? Is that enough? Or do we also have to look at the report and say it was an incredibly thorough investigation and it was a terrible idea not to submit the report? Well, I think stopping at whether or not the investigation was sufficient would certainly help my position, as I think that the investigation was, in fact, sufficient. I do think you need to look at what he uncovered. You have to look at both. If he uncovered something amazing and failed to produce that, I would be hard-pressed to stand before this Court and say it was sufficient that he uncovered it but failed to present it. What deference do we give counsel's decision not to submit that report, though? Because counsel is personally involved in this and apparently did a very thorough job here and made that election that the defendant now is contesting. Counsel's decision is... We just say it's trial strategy? I mean... Akin to it, it's not quite trial strategy as we're now at the sentencing phase. Sentencing strategy. I think sentencing strategy would be an apt description of it. I think that counsel should be afforded deference as we do in trial strategy. You think it's enough if we can look into the record and see there would have been countervailing information that would have been presented that it would at least suggest a strategic basis for not presenting the reports? Yes, Your Honor. Here, especially where the investigation was quite thorough, where counsel put on an extensive sentencing argument and a mitigation strategy, I think where the facts of the expert reports were also harmful to the defendant. And the State was prepared with its own expert? Correct. That this Court could infer that it was strategy and give deference to say. Was your report filed with the Court? I believe our report was filed with the PCR Court, yes. It was not with the sentencing court initially. I believe it was held for rebuttal purposes if necessary. So it's a matter of public record, shall we say? I believe so. All right. Did your report go into his troubled background and childhood? I think it commented upon the evaluations that the defense experts posited, so it did touch upon them. Maybe not in the light the defendant would have liked, but it did comment upon them, yes. Unless Your Honors have any other questions. Thank you very much. Your Honors, a couple of points. I think Judge Fuentes, you asked, you know, maybe everyone asked, you know, if the State is going to have some other... Well, certainly there was bad information because it pointed to preparation and motive and things like that. But, Your Honor, every report about the deficiencies of someone's mental capacity is going to have some unpleasant information. And surely the State is always going to have some rebuttal information. So the idea that there merely exists... Are you suggesting that there was a peremptory obligation on the part of counsel to submit the report just because he had gotten the report? No. In this case, yes, but not in a per se kind of way. We got the report. You have to submit it. But in the situation where, as in this case, where, and we cited to the Alton case, which was very similar, of course there was bad information in that mental health report. And counsel in that case did some investigation and then failed to submit any of it. And the court rejected the idea that it's a reasonable strategy to withhold that information just because there's bad information in it. But in Alton, the difficulty there, I think, for the trial counsel was the lack of a context within which to evaluate how bad the bad was because of the deficiencies in the efforts to uncover school, health, family, all kinds of other background information. So Alton is really not like this situation. In terms of the performance of counsel and the idea behind it, where in a situation where you have here, where you have a first-time offender who, everyone's wondering why this happened. And the reports explain why this happened. And here we are, this fellow committed a terrible act, and the trial counsel at sentencing has this information to mitigate against the penalty and says, we don't know what he said, it's just as reasonable to conclude he forgot them at the office because there's no evidence of why he decided not to do any one thing. But this is a situation, it's probably a unique situation, where you have a circumstance where this will help explain the why in the sentencing judge's mind. It explains the why, but how can we now conclude that it really would have made a difference? Well, again, I mean, I hate to be mechanical about it, Judge, and Mr. Leibovitz will disagree with me, but there are standards. The state has a discretionary sentencing scheme. There are X amount of mitigating factors, there are X amount of aggravating factors. If sentencing counsel has reasonable evidence that supports a mitigating factor, unless there's absolutely no way you should submit this, you should do it. Because that's when you should have the best chance at mitigating against the harsher sentence, at sentencing. Again, we're not talking about guilt. Did he do it, did he not do it? That's a different calculation, and we take no issue with that here. But at sentencing, when the goal is to mitigate the sentence as best as possible, and you have information that would help do that, and you don't submit it. For example, what if, let's change the facts a little bit, what if Mr. Wilcox had a military background, there's a mitigating factor under the state sentencing guidelines that says, submit evidence as a mitigating factor that he was in the military, and then counsel doesn't do it. He investigated, he found out, he knows the military background, he got the discharge papers and everything else, and then he doesn't. Change those facts a little bit, and he has a military background, but he also has a dishonorable discharge for something that he did while he was in the military. That would change whether you'd put in evidence of his military background. Sure. Again, we're not suggesting to take sentencing counsel's strategy completely out of the mix. What we're saying is in this circumstance, where you have the situation where sort of the explanation of how these factors converge at a time of this offense that never happened before and certainly not going to happen again, in that circumstance, when you withhold that evidence, you're depriving the sentencing authority of the opportunity to conclude that he should be giving a lesser sentence. And by depriving the sentencing authority of that, that's the unreasonable performance that we're really tied into. Thank you very much. We certainly understand your argument. We'll take the matter under advice. I want to thank Mr. Bibicos for taking this matter on and his firm of Kozen and O'Connor. We as a court are aided immensely by having argument presented by experienced and capable counsel. And we thank you very much for your efforts in this case. Thank you. Thank you. We'll take the matter under advisement.